## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

LARRY TYLER SANDERS,

                              Plaintiff,

          -vs-

EQUIFAX INFORMATION SERVICES
LLC; EXPERIAN INFORMATION
SOLUTIONS, INC.; and TRANS UNION,
LLC,

                        Defendants.

Case No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Larry Tyler Sanders ("Plaintiff" or "Mr. Sanders"), brings this Complaint against Equifax Information Services LLC ("Defendant Equifax" or "Equifax"), Experian Information Solutions, Inc. ("Defendant Experian" or "Experian"), and Trans Union, LLC ("Defendant Trans Union" or "Trans Union") (collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorneys' fees, for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, arising out of Defendants' mixing and merging of Plaintiff's credit files, credit reports, credit history, and personal identification information with that of his twin brother, a separate consumer with a different middle name, Social Security number, and address history.

## PRELIMINARY STATEMENT

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual citizens. Data technology, whether it be used by businesses, banks, the Internal Revenue Service or other institutions, allows

1

information concerning individuals to flow immediately to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for and subject to mishandling and misuse. Individuals can sustain substantial damage, both emotionally and economically, whenever inaccurate information or fraudulent information is disseminated about them.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      The CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, automobile dealers, potential employers, and other similar interested parties) information commonly called "consumer reports," concerning individuals who may be applying for retail credit, to lease an apartment, to obtain a mortgage, auto loan, employment, or the like.

5.      "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064(AJT/TRJ), 2011 E.S. Dist. LEXIS 28896, *1, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

6.      Congress made the following findings when it enacted the FCRA in 1970:

1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

3) Consumer reporting agencies have assumed a vital role in assembling and evaluation consumer credit and other information on consumers.

4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4). Thus, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

7. Since 1970, when Congress enacted the FCRA, as amended, 15 U.S.C.§ 1681 *et seq.*, federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

8. "Mixed files" create a false description and representation of a consumer's credit history.

9. A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

10. The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

11. Mixed files are not a new phenomenon. Equifax, Experian, and Trans Union have been put on notice of the existence of mixed files and the fact that their procedures for creating

credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

12.     All three credit bureaus, Equifax, Experian, and Trans Union have been the subject of numerous state attorney general actions relating to their mixed file problems.

13.     In 2012, Ohio Attorney General Mike DeWine initiated a multistate investigation of the credit reporting practices of consumer reporting agencies Equifax, Experian, and Trans Union, including the incidence of mixed files. Thirty-one (31) states participated in the enforcement action, which resulted in a $6,000,000 settlement with Equifax, Experian, and Trans Union.[1]  Pursuant to the settlement, the three CRAs promised, among other things, "to implement an escalated process for handling complicated disputes – such as those involving . . . mixed files — where one consumer's information is mixed with another's."[2]

14.     In another example, in 2015, the New York Attorney General filed charges and settled claims with Equifax, Experian, and Trans Union over mixed files. *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.[3]*

15.     Notwithstanding Equifax, Experian, and Trans Union's notice and being subject  to repeated enforcement actions, mixed files persist despite consumers' unique personal identifying information, such as Social Security numbers, names, dates of birth, and addresses.

---

[1] https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-6-million-settlement-credit-reporting-agencies (last visited August 25, 2025).
[2] *Id.*
[3] https://ag.ny.gov/press-release/2015/ag-schneiderman-announces- groundbreaking-consumer-protection-settlement-three (Last visited August 25, 2025);
https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed% 203.8.15.pdf (Last visited August 25, 2025).

16.     Further, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both.

17.     Equifax, Experian, and Trans Union have each been sued thousands of times wherein an allegation was made that Equifax, Experian, and Trans Union violated the FCRA. Moreover, Equifax, Experian, and Trans Union are sued, at a minimum, hundreds of times each year wherein an allegation is made that they mixed a consumers' credit file with that of another person.

18.     Private FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

19.     For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000 in actual damages and $5 million in punitive damages. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

20.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-O, awarded Angela Williams $219,000 in actual damages and $2.7 million in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

21.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000 in actual damages and $18.4

million in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' numerous disputes. Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

22.    Most recently, a jury assessed a $60 million verdict against Trans Union for mixing innocent American citizens with terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC,* No. 12-CV-00632- JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). Despite the verdict, Equifax, Experian, and Trans Union continue to mix consumers' credit files with other consumers' credit files.

23.    "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

24.    No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

25.    Finally, the Federal Trade Commission has specifically warned consumer reporting

6

agencies, including Equifax, Experian, and Trans Union, to review their procedures when a mixed file case occurs.

26.     Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## THE PARTIES

27.     Plaintiff Larry Tyler Sanders ("Mr. Sanders") is a natural person who, at all times material hereto, resided in the City of Wixom, County of Oakland, State of Michigan, and is a "consumer" as defined by the FCRA at 15 U.S.C. § 1681a(c).

28.     Defendant Equifax Information Services LLC ("Defendant Equifax" or "Equifax") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

29.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

30.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

31.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

32.     Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a foreign limited liability company authorized to do business in the State of Michigan, including in the Eastern District.

33.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.§ 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

35.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

36.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect consumers' rights to fairness and accuracy in the reporting of their credit information.

37.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. § 1681(b).

38.     The FCRA further requires that when preparing consumer reports, a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

39.     The Consumer Financial Protection Bureau has long recognized that "[a]s the range and frequency of decisions that rely on credit reports have increased, so has the importance of assuring the accuracy of these reports."[4]

### The Credit Bureaus' Processing of Credit Information

40.     Equifax, Experian, and Trans Union regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

41.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

42.     Equifax, Experian, and Trans Union collect information from thousands of furnishers.

43.     The process by which Equifax, Experian, and Trans Union receive, sort, and store information is largely electronic.

44.     Furnishers report credit information to Equifax, Experian, and Trans Union using coded tapes that are transmitted to Equifax, Experian, and Trans Union on a monthly basis through software known as Metro 2.

45.     Equifax, Experian, and Trans Union take the credit information reported by furnishers and create consumer credit files.

---

[4] Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, at 5 (December 2012).

46.     Equifax, Experian, and Trans Union maintain credit files on more than 200 million consumers.

47.     Credit files are updated electronically by Equifax, Experian, and Trans Union based on furnishers' reporting of new information regarding their reported accounts (sometimes referred to within the industry as "tradelines").

## The Credit Bureaus' Mixed File Problem

48.     Equifax, Experian, and Trans Union know that different consumers can have similar names.

49.     Equifax, Experian, and Trans Union know that different consumers can have similar Social Security numbers.

50.     Equifax, Experian, and Trans Union know that different consumers with similar names can also have similar Social Security numbers.

51.     Equifax, Experian, and Trans Union know that public records often do not contain identifying information such as Social Security numbers or dates of birth.

52.     Equifax, Experian, and Trans Union match tradelines and public records to consumer credit files by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

53.     Equifax, Experian, and Trans Union accomplish this matching of credit information to consumer credit files using certain matching algorithms or database rules.

54.     Sometimes Equifax, Experian, and Trans Union's matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what is commonly known in the industry as a mixed or merged credit file.

55.     Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the three major CRAs, Equifax, Experian, and Trans Union, regarding their significant failures and deficiencies with respect to mixed files.

56.     Despite Equifax, Experian, and Trans Union's long-standing and specific knowledge of the mixed file problem, Plaintiff's credit reports were still generated by Equifax, Experian, and Trans Union containing information belonging to another consumer.

57.     A mixed or merged credit file is the result of Equifax, Experian, and Trans Union inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

58.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms (the database rules) used by Equifax, Experian, and Trans Union to match personal identifying information and credit information, including public record information, to a particular consumer's credit file or files.

59.     The success or failure of these algorithms and rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Equifax, Experian, and Trans Union.

60.     These rules also determine which credit files are selected by the algorithm and merged to create a complete consumer report.

61.     Therefore, a mixed credit file and/or report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one credit file and report.

11

**Plaintiff's Credit Applications for an Auto Loan in September 2023 are Denied and Adversely Impacted Due to Defendants' Inaccurate Credit Reporting**

62.     In or about early September 2023, Plaintiff, who was struggling to fit his growing family, which includes his wife and seven and one-year-old children, in the small Chevrolet Malibu sedan that he owned, began looking to purchase a new or slightly used GMC truck.

63.     On September 7, 2023, Plaintiff began shopping for a used GMC truck at Feldman Chevrolet of New Hudson. Plaintiff found a used 2020 GMC Sierra truck with approximately 45,000 miles that suited he and his family's needs and, shortly thereafter, submitted a credit application for an auto loan through Genisys Credit Union ("Genisys CU").

64.     As part of Plaintiff's loan application, he submitted all of his personal identification information and authorized Genisys CU to access his credit reports.

65.     At the time of Plaintiff's September 7, 2023, auto loan application with Genisys CU, Defendant Experian published a credit report regarding Plaintiff to Genisys CU that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Larry Wesley Sanders III.

66.     Plaintiff's auto loan application with Genisys CU was initially denied as a direct result of the inaccurate information contained within his Experian credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

67.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

68.     However, on or about September 16, 2023, in desperate need of a newer and more spacious vehicle for his growing family, Plaintiff returned to Feldman Chevrolet of New Hudson and submitted another credit application for the purchase of a used 2020 GMC Sierra. This credit

application was placed directly with Feldman Chevrolet who thereafter sent Plaintiff's loan application to numerous lenders in hopes of finding the best interest rate and loan terms to present to Plaintiff. Representatives of Feldman Chevrolet encouraged Plaintiff to pursue this route, insisting that his chances of getting approved for financing would increase if it shopped his credit with numerous lenders, thereby fostering lender competition and increasing the chances of approval.

69.     As part of Plaintiff's loan application directly with Feldman Chevrolet, he submitted all of his personal identification information and authorized Feldman Chevrolet to access his credit reports.

70.     At the time of Plaintiff's September 16, 2023, auto loan application with Feldman Chevrolet, Defendant Trans Union published a credit report regarding Plaintiff to Feldman Chevrolet that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Larry Wesley Sanders III ("Wesley Sanders III"). In fact, Defendant Trans Union's report contained Wesley Sanders III's Social Security number as the primary SSN on the report but included Plaintiff's name and a mixture of both Plaintiff's and Wesley Sanders III's credit accounts and inquiries.

71.     Plaintiff's auto loan application with Feldman Chevrolet was denied or adversely impacted as a direct result of the inaccurate information contained within his Trans Union credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

72.     Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

73.     On September 25, 2023, Feldman Chevrolet shopped Plaintiff's credit application

13

for auto financing with the following lenders: Capital One Auto Finance; Ally Financial; Global Lending Services, LLC; Consumer Portfolio Services; Exeter Finance, LLC; and Nowcom/Westlake Financial.

74.     On September 25, 2023, Defendant Equifax published a credit report regarding Plaintiff to Capital One Auto Finance, Ally Financial, and Global Lending Services, LLC, that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

75.     Capital One Auto Finance, Ally Financial, and Global Lending Services, LLC, either denied Plaintiff's credit application outright or offered Plaintiff credit at an unreasonably high interest rate as a direct result of the inaccurate information contained within his Equifax credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

76.     Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

77.     On September 25, 2023, Defendant Experian published a credit report regarding Plaintiff to Ally Financial, Capital One Auto Finance, Consumer Portfolio Services, Exeter Finance, LLC, Global Lending Services, and Nowcom/Westlake Financial that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

78.     Ally Financial, Capital One Auto Finance, Consumer Portfolio Services, Exeter Finance, LLC, Global Lending Services, and Nowcom/Westlake Financial either denied Plaintiff's credit application outright or offered Plaintiff credit at an unreasonably high interest rate as a direct result of the inaccurate information contained within his Experian credit report, which adversely

impacted his debt-to-income ratio, credit score, and overall creditworthiness.

79.      Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

80.      On September 25, 2023, Defendant Trans Union published a credit report regarding Plaintiff to Ally Financial, Capital One Auto Finance, GM Financial, Consumer Portfolio Services, and Flagship Credit Acceptance that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III. In fact, Defendant Trans Union's report contained Wesley Sanders III's Social Security number as the primary SSN on the report but included Plaintiff's name and a mixture of both Plaintiff's and Wesley Sanders III's credit accounts and inquiries.

81.      Ally Financial, Capital One Auto Finance, GM Financial, Consumer Portfolio Services, and Flagship Credit Acceptance either denied Plaintiff's credit application outright or offered Plaintiff credit at an unreasonably high interest rate as a direct result of the inaccurate information contained within his Trans Union credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

82.      Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

83.      Following September 25, 2023, Plaintiff had yet to obtain auto financing at all or at an affordable rate.

84.      Then, on September 26, 2023, Feldman Chevrolet shopped Plaintiff's credit application with even more lenders in hopes of securing financing for Plaintiff and at an affordable

rate.

85.     On September 26, 2023, Defendant Experian published a credit report regarding Plaintiff to Genisys Credit Union and Lake Trust Credit Union that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

86.     Genisys Credit Union and Lake Trust Credit Union either denied Plaintiff's credit application outright or offered Plaintiff credit at an unreasonably high interest rate as a direct result of the inaccurate information contained within his Experian credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

87.     Defendant Experian again violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

88.     On September 26, 2023, Defendant Trans Union published a credit report regarding Plaintiff to Santander Consumer USA that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III. In fact, Defendant Trans Union's report contained Wesley Sanders III's Social Security number as the primary SSN on the report but included Plaintiff's name and a mixture of both Plaintiff's and Wesley Sanders III's credit accounts and inquiries.

89.     Santander Consumer USA either denied Plaintiff's credit application outright or offered Plaintiff credit at an unreasonably high interest rate as a direct result of the inaccurate information contained within his Trans Union credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

90.     Defendant Trans Union again violated 15 U.S.C. § 1681e(b) by failing to establish

or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

91.     Following September 26, 2023, Plaintiff had yet to obtain auto financing at all or at an affordable rate.

92.     Then, on September 27, 2023, Feldman Chevrolet shopped Plaintiff's credit application with even more lenders in hopes of securing financing for Plaintiff and at an affordable rate.

93.     On September 27, 2023, Defendant Experian published a credit report regarding Plaintiff to Michigan United Credit Union and Financial Plus Credit Union that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

94.     Michigan United Credit Union and Financial Plus Credit Union either denied Plaintiff's credit application outright or offered Plaintiff credit at an unreasonably high interest rate as a direct result of the inaccurate information contained within his Experian credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

95.     Defendant Experian again violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

96.     Finally, on September 27, 2023, Genisys Credit Union accepted Plaintiff's credit application and offered him financing for the used 2020 GMC Sierra, sold to Plaintiff at the price of $45,000.00, at an unreasonably high rate of approximately 9.0%, as a direct result of the inaccurate information contained within his Experian credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

17

97.     Due to the inaccurate, mixed credit information contained within Plaintiff's Experian credit report as of September 27, 2023, and the adverse impact it had on Plaintiff's debt-to-income ratio and Experian credit score, Genisys Credit Union required Plaintiff to make an initial down payment of $6,000.00 in order to proceed with a loan in the amount of approximately $39,000.00 at approximately 9.0% interest. Having no better financing offers, Plaintiff accepted and moved forward with an auto loan with Genisys Credit Union.

98.     But for the Credit Bureau Defendants' inaccurate credit reporting in September 2023 in conjunction with Plaintiff's credit application to finance the used 2020 GMC Sierra, Plaintiff's credit score would have been far superior and lenders would have offered him much more competitive financing rates and loan terms, which would have saved Plaintiff a significant amount of money over the life of the loan.

**Plaintiff's Credit Application for a Personal Loan is Denied by WebBank/Paypal in May 2024 Due to Defendant Equifax's Inaccurate Credit Reporting**

99.     In or about mid-May 2024, Plaintiff, in need of additional funds to enable him to timely make his car insurance payments, began looking into options for a small personal loan in or around $1,400.00.

100.    On or about May 14, 2024, Plaintiff submitted a credit application with WebBank/Paypal.

101.    As part of Plaintiff's credit application, he submitted all of his personal identification information and authorized WebBank/Paypal to access his credit report(s).

102.    At the time of Plaintiff's May 14, 2024, loan application with WebBank/Paypal, Defendant Equifax published a credit report regarding Plaintiff to WebBank/Paypal that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

103.     WebBank/Paypal denied Plaintiff's personal loan application as a direct result of the inaccurate information contained within his Equifax credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

104.     Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

**Plaintiff's Credit Applications for a Sam's Club Credit Card are Denied in July 2024 Due to Defendants Equifax and Trans Union's Inaccurate Credit Reporting**

105.     In or about mid-July 2024, Plaintiff, in need of a line of credit to assist with the rising cost of groceries for his growing family, applied for a Sam's Club credit card, which is issued through Synchrony Bank.

106.     On or about July 16, 2024, Plaintiff submitted a credit application with Synchrony Bank for a Sam's Club credit card.

107.     As part of Plaintiff's credit application, he submitted all of his personal identification information and authorized Synchrony Bank/Sam's Club to access his credit report(s).

108.     At the time of Plaintiff's July 16, 2024, loan application with Synchrony Bank/Sam's Club, Defendant Equifax published a credit report regarding Plaintiff to Synchrony Bank/Sam's Club that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

109.     On or about July 30, 2024, Plaintiff, refusing to give up and still in need of a line of credit at Sam's Club to support his family, submitted a second credit application with Synchrony Bank for a Sam's Club credit card.

110.     As part of Plaintiff's credit application, he once again submitted all of his personal identification information and authorized Synchrony Bank/Sam's Club to access his credit report(s).

111.    At the time of Plaintiff's July 30, 2024, loan application with Synchrony Bank/Sam's Club, Defendant Trans Union published a credit report regarding Plaintiff to Synchrony Bank/Sam's Club that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

112.    Synchrony Bank/Sam's Club denied Plaintiff's credit applications as a direct result of the inaccurate information contained within his Equifax and Trans Union credit reports, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

113.    Defendants Equifax and Trans Union both violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information they published and maintain concerning Plaintiff.

**Plaintiff's Credit Application for a Personal Loan is Denied by WebBank/Paypal for a Second Time in September 2024 Due to Defendant Equifax's Inaccurate Credit Reporting**

114.    In or about early September 2024, Plaintiff, once again in need of additional funds to enable him to timely make his car insurance payments, began looking into options for a small personal loan in or around $1,400.00.

115.    On or about September 11, 2024, Plaintiff submitted a credit application with WebBank/Paypal.

116.    As part of Plaintiff's credit application, he submitted all of his personal identification information and authorized WebBank/Paypal to access his credit report(s).

117.    At the time of Plaintiff's September 11, 2024, loan application with WebBank/Paypal, Defendant Equifax published a credit report regarding Plaintiff to WebBank/Paypal that was mixed with another consumer's personal and credit account information, namely, Plaintiff's twin brother, Wesley Sanders III.

118.    WebBank/Paypal denied Plaintiff's personal loan application, now for a second

time, as a direct result of the inaccurate information contained within his Equifax credit report, which adversely impacted his debt-to-income ratio, credit score, and overall creditworthiness.

119.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

### Plaintiff Discovers the Full Extent of His Mixed Credit Files With Defendants Equifax and Experian in November 2024

120.    In or about early November 2024, concerned by Equifax's continued inaccurate reporting, Plaintiff requested a copy of his Equifax credit report.

121.    Soon thereafter, Plaintiff received a copy of his Equifax credit report dated November 20, 2024.

122.    Upon review, Plaintiff was frustrated to discover that Equifax was reporting the following accounts and items of information that do not belong to him, which appeared on his Equifax credit report as follows:

1. **Accounts**

    **THE HUNTINGTON NATL BANK**
    Partial Account #: ending in 5818
    Account Type: Revolving
    Responsibility: Individual
    Date Opened: Apr 21, 2022
    Balance: $0

    **CITIZENS ONE**
    Partial Account #: ending in 3956
    Account Type: Revolving
    Responsibility: Individual
    Date Opened: Apr 27, 2022
    Balance: $0
    High Credit: $890

    **SYNCB/WALMART**
    Partial Account #: ending in 9772

Account Type: Revolving
Responsibility: Individual
Date Opened: May 26, 2014
Credit limit: $230
High Credit: $546

**UPLIFT, INC.**
Partial Account #: ending in 58
Account Type: Installment
Responsibility: Individual
Date Opened: Jun 01, 2023
Balance: $0
High Credit: $158

**CENTRAL MACOMB COMMUNITY C**
Partial Account #: ending in 0001
Account Type: Installment
Responsibility: Individual
Date Opened: Dec 07, 2021
Balance: $0
High Credit: $3,030

2. **Personal Information**

    a. **Addresses Reported:**
       2591 W Coon Lake Rd
       Howell, MI 48843

       517 Eckschtay St
       Novi, MI 48374-1103

123.    None of the five (5) above-referenced credit accounts or two (2) above-referenced addresses belong to Plaintiff. In fact, they belong to Plaintiff's twin brother, Wesley Sanders III.

124.    In or about early November 2024, concerned by Experian's continued inaccurate reporting, Plaintiff requested a copy of his Experian credit report.

125.    Soon thereafter, Plaintiff received a copy of his Experian credit report dated November 20, 2024.

126.    Upon review, Plaintiff was frustrated to discover that Experian was reporting the following accounts and items of information that do not belong to him, which appeared on his

Experian credit report as follows:

1. **Accounts**

   **AMERICREDIT/GM FINANCIAL**
   Partial Account #: 45749
   Account Type: Auto Loan
   Responsibility: Joint with Julie A. Sanders
   Date Opened: Jul 2015
   Recent Balance: $715 as of May 2022

   **OPORTUN/WEBBANK**
   Partial Account #: 1166
   Account Type: Credit Card
   Responsibility: Individual
   Date Opened: Feb 2022
   Recent Balance: $1,720 as of Oct 2024

   **CITIZENS BANK NA**
   Partial Account #: 605830101162
   Account Type: Line of Credit
   Responsibility: Individual
   Date Opened: Apr 2022
   Credit limit or original amount: $2,500
   High Balance: $890

   **SYNCB/WALMART**
   Partial Account #: 603220368284
   Account Type: Charge Card
   Responsibility: Individual
   Date Opened: May 2014
   Credit limit or original amount: $230
   High Balance: $546

   **THE HUNTINGTON NATL BANK**
   Partial Account #: 585379000475
   Account Type: Line of Credit
   Responsibility: Individual
   Date Opened: Dec 2021
   Credit limit or original amount: $250
   High Balance: $500

**THE HUNTINGTON NATL BANK**
Partial Account #: 585379000590
Account Type: Line of Credit
Responsibility: Individual
Date Opened: Apr 2022
Credit limit or original amount: $100
High Balance: $100

2.  **Inquiries:**

    a.  AMEX
        Inquiry Date: May 31, 2023

3.  **Personal Information**

    a.  **Names Reported:**
        Larry W Sanders
        Name ID #3247

        Larry W Sanders 3
        Name ID #31400

        Larrt T Sanders
        Name ID #4420

        Larry W Sanders Sanders 3
        Name ID #5241

        Larry Sanders 2
        Name ID #21869

    b.  **Addresses Reported:**
        2591 W Coon Lake Rd
        Howell, MI 48843-8970

        325 S Michigan Ave Unit 2257
        Howell, MI 48844-5056

        517 Eckschtay St
        Novi, MI 48374-1103

24

    c.  **Social Security Number Variations:**
       XXX-XX-8507

    d.  **Telephone Numbers:**
       517-294-3556

       517-375-0749

127.    None of the six (6) above-referenced credit accounts, inquiries, and personal information belongs to Plaintiff. In fact, such information belongs to Plaintiff's twin brother, Wesley Sanders III.

**Plaintiff is Unable to Obtain a Copy of His Trans Union Credit Report in November 2024**

128.    In or about late November 2024, Plaintiff attempted to obtain a copy of his Trans Union credit report online through Trans Union's website. Plaintiff entered all of his personal identification information accurately and submitted his request.

129.    However, at this time, on or about November 20, 2024, Trans Union failed to provide Plaintiff with a copy of his credit file stating, "Unable to Complete Identify Verification. We are unable to match the information you provided with your TransUnion credit report, and therefore cannot complete your request at this time. We're sorry for the inconvenience."

130.    Plaintiff was stressed, anxious, and frustrated at the fact that Trans Union would not provide him with a copy of his credit report.

131.    While Plaintiff didn't know it then, but he does know now, as of November 20, 2024, Trans Union only had one combined credit file for both he and his twin brother, Larry Wesley Sanders III, but the combined credit file was anchored with Wesley Sanders III's Social Security number as the primary SSN on the combined credit file. Thus, this is why Trans Union sent Plaintiff the error message and was unable to verify his identity on November 20, 2024: the only credit file and report that Trans Union had for Plaintiff was really his twin brother's credit

file mixed with Plaintiff's personal identification information and credit accounts.

**Plaintiff Disputes with the Credit Bureau Defendants in February 2025**

132.     On or about February 19, 2025, Plaintiff mailed written dispute letters to Equifax, Experian, and Trans Union, via Certified Mail, disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him but, rather, belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his twin brother's personal and credit information into his credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting (by unmixing the combined file), and send him a corrected copy of his credit reports.

133.     Plaintiff's written disputes specifically included his full legal name, date of birth, Social Security number, and current address so that Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit file(s).

134.     Along with his February 2025 dispute letters, Plaintiff enclosed a copy of his driver's license, Social Security card and a copy of his November 2024 Equifax and Experian credit reports.

**The Credit Bureaus' Method for Considering Consumer Credit Report Disputes**

135.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

136.     The credit bureaus, including Defendants, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency- created prompts for automated

consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

137.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

138.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

139.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

140.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

141.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

142.     Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

143.     The data furnishers then have an obligation under the FCRA to conduct a reasonable investigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

144.     Once the data furnisher completes its investigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

**The Credit Bureau Defendants Fail to Conduct a Reasonable Reinvestigation of or Respond to Plaintiff's February 2025 Disputes**

145.     Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation of and failed to respond to Plaintiff's February 2025 disputes.

146.     Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in February 2025, in violation of 15 U.S.C. § 1681i.

147.     Defendants Equifax, Experian, and Trans Union failed to provide Plaintiff with a copy of his credit reports in February 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff's Second Round of Disputes with the Credit Bureau Defendants in April 2025**

148.     On or about April 9, 2025, growing even more frustrated, stressed, and anxious about his mixed credit file, inability to obtain credit, and the Credit Bureau Defendants' failure to correct the issue back in February, Plaintiff mailed a second round of written dispute letters to Equifax, Experian, and Trans Union, via Certified Mail, disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him, but rather belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his twin brother's personal and credit information into his credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed

information, correct their reporting (by unmixing the combined file), and send him a corrected copy of his credit reports.

149.    Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit file(s).

150.    Along with his April 2025 dispute letters, Plaintiff enclosed a copy of his driver's license, Social Security card and a copy of his November 2024 Equifax and Experian credit reports.

**The Credit Bureau Defendants Fail to Conduct a Reasonable Reinvestigation of or Respond to Plaintiff's April 2025 Disputes**

151.    Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation of and failed to respond to Plaintiff's April 2025 disputes.

152.    Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in April 2025, in violation of 15 U.S.C. § 1681i.

153.    Defendants Equifax, Experian, and Trans Union failed to provide Plaintiff with a copy of his credit reports in April 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff's Third Round of Disputes with the Credit Bureau Defendants in June 2025**

154.    On or about June 20, 2025, growing increasingly frustrated, stressed, and anxious about his mixed credit file, inability to obtain credit, and the Credit Bureau Defendants' failure to correct the issue back in February or April, Plaintiff mailed a third round of written dispute letters to Equifax, Experian, and Trans Union, via Certified Mail, disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him, but rather belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that

he believed that Defendants had mixed his twin brother's personal and credit information into his credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting (by unmixing the combined file), and send him a corrected copy of his credit reports.

155.    Again, Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit file(s).

156.    Along with his June 2025 dispute letters, Plaintiff enclosed a copy of his driver's license, Social Security card and a copy of his November 2024 Equifax and Experian credit reports.

**The Credit Bureau Defendants Fail to Conduct a Reasonable Reinvestigation of or Respond to Plaintiff's June 2025 Disputes**

157.    Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation of and failed to respond to Plaintiff's June 2025 disputes.

158.    Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in June 2025, in violation of 15 U.S.C. § 1681i.

159.    Defendants Equifax, Experian, and Trans Union failed to provide Plaintiff with a copy of his credit reports in June 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

**Plaintiff's Fourth Round of Disputes with the Credit Bureau Defendants in July 2025**

160.    On or about July 31, 2025, growing increasingly frustrated, stressed, and anxious about his mixed credit file, inability to obtain credit, and the Credit Bureau Defendants' failure to correct the issue back in February, April, or June, Plaintiff mailed a fourth round of written dispute

letters to Equifax, Experian, and Trans Union, via Certified Mail, disputing the inaccurate personal and credit information contained in each of his respective credit reports, which does not belong to him, but rather belongs to another consumer, namely, Plaintiff's twin brother. Plaintiff explained that he believed that Defendants had mixed his twin brother's personal and credit information into his credit file and further explained that he should have his own credit file, separate from his twin brother's. Plaintiff requested that Equifax, Experian, and Trans Union reinvestigate the disputed information, correct their reporting (by unmixing the combined file), and send him a corrected copy of his credit reports.

161. Again, Plaintiff's written disputes specifically included his full name, date of birth, Social Security number, and current address so that Equifax, Experian, and Trans Union would be able to properly identify him and locate his credit file(s).

162. Along with his July 2025 dispute letters, Plaintiff enclosed a copy of his driver's license, Social Security card and a copy of his November 2024 Equifax and Experian credit reports.

**The Credit Bureau Defendants Fail to Conduct a Reasonable Reinvestigation of or Respond to Plaintiff's July 2025 Disputes**

163. Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation of and failed to respond to Plaintiff's July 2025 disputes.

164. Defendants Equifax, Experian, and Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of the personal and credit information disputed by Plaintiff in July 2025, in violation of 15 U.S.C. § 1681i.

165. Defendants Equifax, Experian, and Trans Union failed to provide Plaintiff with a copy of his credit reports in July 2025, as requested in writing, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681g.

166. As a result of the Credit Bureau Defendants' conduct, action, and inaction,

Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

167.    At all times pertinent hereto, the Credit Bureau Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Credit Bureau Defendants herein.

168.    At all times pertinent hereto, the conduct of the Credit Bureau Defendants, as well as that of their agents, servants, and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal law and the rights of Plaintiff herein.

### CLAIMS FOR RELIEF

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

169.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-168 as if fully stated herein.

170.    Defendants Equifax, Experian, and Trans Union each violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible

accuracy of the contents of the credit reports and credit files they published and maintain concerning Plaintiff.

171.  As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

172.  Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

173.  Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

174.  Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-168 as if fully stated herein.

175.  Defendants violated 15 U.S.C.§ 1681i by failing to delete inaccurate information

in Plaintiff's credit file(s) after they received notice of such inaccuracies; by failing to conduct a reasonable reinvestigation of disputed personal information, credit accounts, and hard inquiries within the 30-day time frame outlined in the FCRA; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file(s) and reports.

176.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

177.    Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

178.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C.§ 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681b(a)**
**Furnishing a Credit Report Without a Permissible Purpose**
**(Third Claim for Relief Against Defendants Equifax, Experian, and Trans Union)**

179.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-168 as if fully stated herein.

180.    This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

181.    Plaintiff is a "consumer" as defined by the FCRA.

182.    Defendants Equifax, Experian, and Trans Union are consumer reporting agencies that furnish consumer reports as defined and contemplated by the FCRA.

183.    The FCRA prohibits any consumer reporting agencies from furnishing a consumer report unless they have a permissible purpose enumerated under the FCRA, 15 U.S.C. § 1681b(a).

184.    On multiple occasions in the two years preceding the filing of Plaintiff's Complaint, Defendants Equifax, Experian, and Trans Union furnished Plaintiff's credit reports to various creditors without a permissible purpose in response to an applications of credit initiated by another consumer, Wesley Sanders III, which did not involve Plaintiff and which Defendants Equifax, Experian, and Trans Union therefore had no reason to believe that the various creditors intended to use Plaintiff's credit information in connection with a credit transaction involving another consumer, in violation of 15 U.S.C. § 1681b(a).

185.    As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate

credit reporting; invasion of privacy; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

186. Defendants' conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

187. Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV**
**15 U.S.C. § 1681g**
**Failure to Provide Plaintiff with his Credit File**
**(Fourth Claim Against Defendants Equifax, Experian, and Trans Union)**

188. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-168 as if fully stated herein.

189. The FCRA mandates that:

Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:

(1) All information in the consumer's file at the time of the request;

(2) The sources of the information;

(3)(A) Identification of each person;

(4) The dates, original payees, and amounts of any checks upon which is based any adverse characterization of the consumer, included in the file at the time of the disclosure.

(5) A record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer.

(6) If the consumer requests the credit file and not the credit score, a statement that the consumer may request and obtain a credit score.

15  U.S.C. § 1681g.

190.     Defendants violated 15 U.S.C. § 1681g by failing to provide Plaintiff with his credit files and reports on multiple occasions, despite having received several requests for the same along with documents proving his identity and current address.

191.     As a result of the Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit and/or being offered credit under adverse terms; loss of the ability to purchase and benefit from his good name and credit rating; detriment to his credit rating, debt-to-income ratio, and overall creditworthiness; being chilled from seeking additional credit opportunities; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; invasion of privacy; lack of information he was otherwise entitled to under federal statute; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumers' personal and credit account information mixed into his credit files; and the stress of having false and misleading information circulated about him through his credit reports and/or not having his own credit report.

192.     Defendants' conduct, action, and inaction was willful, rendering them liable for

actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

193.    Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)    Determining that each Defendant negligently and/or willfully violated the FCRA as alleged herein;

b)    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiff reasonable attorneys' fees and costs from each Defendant as provided by the FCRA; and

d)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

194.    Plaintiff demands a trial by jury.


Dated: September 3, 2025

By: */s/ Adam S. Alexander*
Adam S. Alexander (P53584)
**ALEXANDER LAW FIRM**
Attorney for Plaintiff
17200 W. Ten Mile, Ste. 200
Southfield, MI 48075
Tel: (248) 246-6353
Fax: (248) 746-3793
Email: adalesq@gmail.com

Hans W. Lodge, MN Bar No. 0397012*
Bryan L. Plaster, MN Bar No. 0402792*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Telephone: (612) 607-7794
Fax: (612) 584-4470
Email: hlodge@bergermontague.com
      bplaster@bergermontague.com
*Pro hac vice application forthcoming*

*ATTORNEYS FOR PLAINTIFF*